The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn including the depositions of Ms. Oliver and Dr. Ferre and the rebuttal testimony of plaintiff. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the deletion of Stipulation #5 and Conclusion of Law #2 and other modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement incorporated herein by reference and at the hearing, as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff-employee at all relevant times herein, but defendant-employer contends that plaintiff was not acting within the scope and course of employment at the time of the alleged injury.
3. North Carolina Home Builders-SIF provided workers compensation insurance coverage at the time of the accident or incident herein.
4. Plaintiffs average weekly wages will be determined from a Form 22, which was stipulated into evidence by both parties as stipulated exhibit #2. The Form 22 indicates that plaintiff earned $2,255.00 from October 23, 1996 through November 26, 1996.
5. The date of the alleged accident is December 1 or 2, 1996.
6. The issues to be determined are as follows:
 a) Whether plaintiff sustained an injury by accident on or about December 1 or 2, 1996, while in course and scope of his employment with defendant-employer?
b) If so, to what benefits, if any, is plaintiff entitled to receive?
 ***********
The Pre-Trial Agreement and its attachments and any stipulations that have been submitted by the parties are hereby incorporated herein by reference. Furthermore, the deposition of Sandra K. Oliver and the deposition and medical records of Dr. George A. Ferre are a part of the evidentiary record in this matter.
 ***********
The Full Commission adopts with modification the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff was born on May 20, 1953. Although he completed the eighth grade and started the ninth grade, he cannot read or write. Plaintiff learned to operate heavy equipment through working with his brother and others. Before working for defendant-employer he worked for Eagle Construction and Blythe Construction performing slope work.
2. Plaintiff began working for defendant-employer in October 1996 as a foreman. Defendant-employer is in the business of clearing real property and laying water and sewer lines. Defendant-employer is owned and operated by Ray and David Funderburk.
3. Defendant-employers employees were not able to work after Thanksgiving 1996 because of the wet weather. Therefore, plaintiff approached defendant-employer and asked if they would like for him to find work for them in South Carolina around his home since the land there was sandy in nature and therefore not as wet as the land where defendant-employer had pending contracts and work. Defendant-employer agreed to allow plaintiff to pursue this.
4. Plaintiff informed defendant-employer that he had located a job for them with Gene Burk near Jefferson, South Carolina. Defendant-employer had one of its other employees take a bulldozer to plaintiff around the end of November 1996 believing that plaintiff was being paid to clear land for Mr. Burk.
5. After not hearing from plaintiff for several days, Ray and David Funderburk went to Jefferson, S.C. on December 1, 1996 to determine the status of the Burk job. When they arrived at the work site, they noticed the work had been performed but neither plaintiff nor the bulldozer was present. The bulldozer has gouger bars, which leave distinctive tracks when it moves. They followed the marks to locate plaintiff. When they located plaintiff he was driving the bulldozer across an open field. Plaintiff got off the bulldozer and hurried nervously, nearly running across the field, to meet them.
6. Plaintiff testified that when he got off the bulldozer he stumbled and fell flat on his face injuring himself. However, Ray and David Funderburk did not see plaintiff fall. In addition, plaintiff indicated that David Jenkins was also present but did not produce him as a witness at the hearing before the Deputy Commissioner.
7. Thereafter, plaintiff and the Funderburks discussed that the ground was too wet and that they would load up the machine to return it to their place of business. Plaintiff went back to the bulldozer and drove it over to the road bank and then up the steep road bank. Due to concern about damaging the road, plaintiff drove the dozer back down the road bank and about two hundred and fifty feet to a side dirt road to load it. At that time plaintiff indicated that he had a truck to sell the Funderburks, which was across the road. They went to take a look at it first and then went to where plaintiff said he lived which was about a quarter of a mile away. During this time plaintiff did not mention injuring himself or having pain.
8. Defendant-employer did not receive any money for the job or word from plaintiff for the next couple of days. In fact, plaintiff did not show up on payday. Therefore, on December 6, 1996, Ray and David Funderburk returned to the work site and the trailer where plaintiff had indicated he lived to deliver to plaintiff his paycheck and to find out if he had been paid for the work he had performed for Mr. Burk. When they could not locate plaintiff, they then went to a country store nearby and asked where he could be found. They were sent down a dirt road adjacent to the field in which they had seen plaintiff operating their bulldozer several days before. When they turned off the dirt road that was maintained by the State of South Carolina, and onto a private dirt road that plaintiff indicated was a road located on real property owned by him, and proceeded up the private drive they noticed that it had been recently reworked. In fact they noticed tracks from the company bulldozer, which led to and from where they had met plaintiff earlier.
9. The private drive continued until it came to an open field and a house. As the Funderburks proceeded to the open field and house they noticed that there had been recent clearing in the field and around the house. The work that they saw would have taken from three to four days to perform. Tracks from defendant-employers bulldozer were present. They followed the tracks, which lead them first to the field where they had seen plaintiff operating their bulldozer and also to the place where they had picked up their bulldozer. Significantly, the field where defendants saw plaintiff operating their bulldozer was not one in which any work was being performed, but plaintiff was taking the machine to another location. They never located plaintiff.
10. The Funderburks took pictures of the residence and surrounding areas, which were later identified by Sandra Oliver, plaintiffs former girlfriend, as plaintiffs residence and land adjacent to his residence that he was buying from Gene Burk to open a club called Sand Hills Country Club. In fact Ms. Oliver had been plaintiffs partner until there relationship became tumultuous and then ended. Plaintiff admitted that the club is located on his property and that he is paying for it but indicated that it is actually owned by his daughter who was only eleven years old.
11. Plaintiff was seen by Dr. Montgomery on December 3, 1996 with complaints of back pain. He first told Dr. Montgomery that he fell off of his bulldozer but then when questioned specifically about how he fell off of the machine he changed his story and stated that he did get off without a problem and then fell. He did not tell Dr. Montgomery that he had a work-related injury and in fact told him that he had been unable to get work because of his back problems. Dr. Montgomery found that plaintiffs subjective complaints were out of proportion with physical findings and some of his complaints did not correlate with known physiologic or anatomic patterns.
12. The Funderburks did not hear from plaintiff and did not have any indication that plaintiff was claiming that he had injured himself until December 14, 1996, when they received a call from a doctors office inquiring whether defendants would pay for plaintiffs treatment. Defendants informed the doctors office that they had no knowledge of plaintiff being injured.
On December 17, 1996, defendant-employer received a telephone call from a drug store inquiring if they would pay for medications for plaintiff in reference to an injury he had sustained while working for defendants. Ray Funderburk asked to speak to plaintiff and plaintiff was put on the telephone. Ray Funderburk told plaintiff that he needed to come by the office and fill out a statement so that it could be reported to the workers compensation carrier, and that he did not know whether the carrier would accept plaintiffs claim.
13. Plaintiff admitted that he performed work on his own property but claimed that the work was performed with his brothers loader. However, plaintiff had no documentation of this and plaintiffs brother did not testify at the hearing.
14. Plaintiff denied ever having prior back problems in his recorded statement, however he admitted to Dr. Montgomery on December 3, 1996 that he had sustained an injury to his back in the 1980s. He also stated that he had been told that he has a congenital deformity involving his back muscles.
15. Plaintiff was seen by Dr. Ferre, an orthopedic surgeon, on one occasion. To the extent that Dr. Ferre relates plaintiffs back condition to any alleged work-related incident, his opinion is based on inaccurate information provided by plaintiff.
16. Plaintiff did not sustain an injury on December 1 or 2, 1996, while in the course and scope of his employment with the defendant-employer. Even if plaintiff sustained an injury on December 1 or 2, 1996, it was while he was performing work for himself. Moreover, the work he performed did not benefit defendants in way.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSION OF LAW
Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer and he is therefore not entitled to receive any benefits under the North Carolina Workers Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 AWARD
1. Plaintiffs claim for workers compensation benefits is hereby, and the same shall be, DENIED.
2. The parties shall bear their own costs.
This the ___ day of June 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER